## TAKEOVER AGREEMENT

THIS AGREEMENT, made and entered into this ____1ˢᵗ____ day of July, 2014, by and between the Ramapo Central School District (hereinafter "Owner") and Star Insurance Company (hereinafter "Surety").

WHEREAS on or about August 28, 2012, Owner entered into a certain contract (hereinafter the "Contract"), with DM Restoration, Inc. (hereinafter "Contractor") for work to be performed at Suffern Middle School/Suffern High School (hereinafter the "Project"). The terms and conditions of the Contract for the Project is hereby incorporated herein by this reference, and

WHEREAS Surety, executed the required Performance and Payment Bonds (Bond No. SSB0753651 each in penal sum of $1,290,286.00, and

WHEREAS on January 30, 2014 Owner issued a letter purporting to default and terminate Contractor's right to proceed under the Contract prior to the full completion of the work required, and Owner has made demand on Surety, under the provisions and conditions of said Performance Bond, to take over and complete all required work that remains to be performed, and

WHEREAS Contractor disputes the propriety of such default and termination and maintains the Owner was, in fact, in default of the Contract, and

WHEREAS Owner disputes the Contractor's position that Owner was in default of the Contract, and

WHEREAS, the Surety is willing to undertake the completion of the Contract in accordance with the terms of the Performance Bond and this Agreement provided that in doing so it reserves all rights and remedies and will receive the entire Contract Balance hereinafter defined and as set forth below; and

NOW, THEREFORE, in consideration of Surety agreeing to complete the work required by Contract and for other valuable considerations, the receipt of which is hereby acknowledged, the parties to this agreement do covenant and agree as follows:

1. The recitals set forth above are incorporated herein.

2. Owner will pay the sum of $278,703.70, (the "Contract Balance") subject to the vacatur of the NYS Dept. of Labor withholding in the sum of $100,000, together with any additional amount of money added to Contract price following the date of this agreement on account of extra work and/or change orders as the work progresses at the times and under the procedures according to terms and conditions of the Contract, including retainage currently held or coming due in the future. The amount to be paid includes all monies due or to become due contractor arising out of or incidental to the performance of the Contract, including, but not limited to, unpaid Contract balances including unpaid monies relating to changes orders for work performed prior to the date of this agreement (collectively hereinafter called "Contract Balances"). The Owner will pay the Contract



**EXHIBIT**

**A**

Balances to Surety or in accordance with Surety's written directions (1) in accordance with the terms of this Agreement; (2) in accordance with the terms of the Contract as to time, amounts and methods of payments. Where there is a conflict in such terms, the Contract shall control except, monies shall be paid to Surety or such other persons, firms or corporations as Surety may direct in writing at any time or times hereafter.

Owner further agrees , notwithstanding any provision to the contrary in the contract, to make such payments, regardless of whether or not any lien or other claims to said funds have been made, provided Surety (1) agrees to take over the owner's defense of such claims or any claim or lien filed or presented after such payment, at the expense of Surety and (2) agrees to indemnify Owner and its members, agents and employees, to the extent of the amounts so released, against liability for making such payments notwithstanding the pendency of such lien or other claim or lien or claim filed or presented after such payments.

3. Surety shall perform with reasonable speed all of the remaining work required by the contractor's Contract, including warranties and guarantees therein contained, in accordance with the terms and conditions of said Contract. Owner agrees that in no event shall Surety be liable for any and all sums, amounts, claims, liquidated or unliquidated damages, compensations, actual or punitive damages, penalties, assessments, fees, fines whether claimed or imposed for any reason by any person, comptroller, entity, or Federal, State, County or Municipal governmental agency or political subdivision thereof for any sum in excess of the penal amount of the Performance Bond: $1,290,286.00. Surety may cause further work to complete the Contract to cease on its behalf if it has expended the full bond penalty. Nothing in this agreement shall be construed in any way to release any other liability of Surety to the Owner under the aforesaid Bond.

4. The Surety shall be represented at the Project by Dino Colalillo, Lovett Silverman (the "Consultant"). Prior to proceeding with the work, the Surety shall specifically authorize, in writing, an individual with the Consultant to be its representative (the "Authorized Individual") solely for the purposes set forth in this paragraph. The Authorized Individual will represent the Surety in dealing with the Owner on day- to- day construction issues with respect to the Project. The Surety hereby designates the Authorized Individual to prepare and process pay requisitions on the Contract. Payments from the Owner shall be made payable to the Surety and transmitted to the Surety at the following address, unless and until the Owner is notified in writing of any different addresses: Meadowbrook Insurance Group, 26255 American Dr., Southfield,MI 48024-6112. Attention Laura Craycraft.

The Authorized Individual shall have, on behalf of the Surety, the authority to negotiate and sign change orders for extra work (work that is different from, in excess of, or beyond the scope of the work required by the Contract) requested or required by the Owner (hereinafter "Change Order") without the Surety's prior written approval. The Authorized Individual has no authority to negotiate deductive Change Orders, credits, back-charges, or net deductions from the Contract or the Contract Balance of any nature whatsoever without the Surety's prior written approval. Surety agrees to correct any and all work performed by the Contractor which is not in conformance with the specifications, terms, conditions and provisions of the Contract, at no cost to the Owner.

5. Owner and Surety agree that any and all agreements, judgmental decisions, and any other matters pertaining to the day-to-day coordination of the work to be performed under the Contract will be made between Surety's designated representative, and the Owner's engineer/architect in charge or a designated representative of the Owner as provided in the contract. Owner understands and agrees that Surety may arrange for the Contractor to perform and complete the remaining work under the Contract. Surety may designate a procedure contractor and/or a third-party to represent its interests and owner agrees to cooperate with Surety's designated representative(s) in providing any information concerning the performance of the Contract. It is agreed that in the event Surety exercises their right to procure a new contractor, that the parties shall engage in mutual cooperation in order to insure a smooth transition of work.

Surety will be entitled to time extensions (a) in accordance with the terms and conditions of the Contract allowing same and (b) with respect to any latent defects as of the date of this Agreement adversely affecting the scheduled completion.

6. Surety will, with all reasonable dispatch, investigate and discharge its liability under the Payment Bond as to all demands upon it by subcontractors and suppliers to Contractor or labor and material in connection with the Contract.

7. Regardless of any claim or contentions which Contractor has made or may make against the Owner or which the Owner has made or may against the Contractor, the Owner will fully perform all of the obligations undertaken by it in the Contract and among other things, will make payment to Surety of all amounts due or to become due in relation to the Contract as if Surety were the original "contractor" under the Contract.

8. In consideration for the promises made herein, Star on its own behalf as surety, all of its current or former subsidiaries, parents, partners, partnerships, divisions, affiliates, insurers, members, dealers, officers, directors, managers, employees, shareholders, assigns, attorneys, agents, and successors in interest, attorney in fact and assignee of the rights of DM Restoration, Inc. in accordance with the terms of a certain General Indemnity Agreement dated May 21, 2012 executed by DM Restoration, Inc. in favor of Star, hereby release and forever discharge the Board of Education of the Ramapo Central School District and Ramapo as well as its subsidiaries, parents, partners, partnerships, divisions, affiliates, insurers, members, dealers, officers, directors, managers, employees, shareholders, assigns, attorneys, agents, and successors in interest, from any and all claims, defenses, demands, actions, allegations, causes of action, debts, dues, accounts, agreements, judgments, settlements, obligations, damages (whether incidental, consequential, ensuing or resulting), losses, costs, attorneys' fees and expenses of every kind and nature whatsoever, known or unknown, fixed or contingent, as to the Project and the goods and services upon which such claims were based. The Parties expressly agree and understand that the terms of this release are not meant to release or limit any rights of Star under the instant Takeover Agreement.

In consideration for the promises made herein, Ramapo on its own behalf and all of its current or former subsidiaries, parents, partners, partnerships, divisions, affiliates, insurers, members, dealers, officers, directors, managers, employees, shareholders, assigns, attorneys, agents, and successors in interest, hereby release and forever discharge Star and DM Restoration, Inc. as well as its subsidiaries, parents, partners, partnerships,

divisions, affiliates, insurers, members, dealers, officers, directors, managers, employees, shareholders, assigns, attorneys, agents, and successors in interest, from any and all claims, defenses, demands, actions, allegations, causes of action, debts, dues, accounts, agreements, judgments, settlements, obligations, damages (whether incidental, consequential, ensuing or resulting), losses, costs, attorneys' fees and expenses of every kind and nature whatsoever, known or unknown, fixed or contingent, as to the Project and the goods and services upon which such claims were based. The Parties expressly agree and understand that the terms of this release are not meant to release or limit any rights of Ramapo under the instant Takeover Agreement.

9. This Agreement is entered into solely for the benefit of the Owner and the Surety. The Owner and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than the Owner and the Surety. Specifically, the Owner and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

10. This Agreement constitutes the whole of the understanding, discussions and agreements by and between the Owner and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Owner and the Surety acknowledge that there have been no oral, written, or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

11. This Agreement shall not be changed, amended or altered in any way except in writing and executed by both the Owner and Surety.

12. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

13. Notwithstanding anything contained herein to the contrary, nothing herein will waive, impair, or limit any right, power, claim, remedy, or defense of Surety against Principal (and its subcontractors, agents, employees, and assigns) under any contract or agreement between or among Principal and Surety at law or in equity.

14. This Agreement shall be governed by and controlled by the laws of the State of New York. Any proceeding, legal or equitable, under the Bond or this Agreement may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located.

15. Any notices which are required to be given by the terms of this Agreement shall be made by certified mail, return receipt requested, postage prepaid, or by common overnight carrier (i.e. Federal Express) as follows:

As to the Owner:

Kelly E. Seibert

Assistant Superintendent for Business
Ramapo Central School District
45 Mountain Avenue
Hillburn, New York 10931
(845) 357-7783 ext. 11241
(845) 357-3073 (fax)
kseibert@ramapocentral.org

With a copy to:

Thomas S. Tripodianos
Welby, Brady & Greenblatt, LLP
11 Martine Avenue, 15th Floor
White Plains, New York   10606
Direct Dial 914.607.6440
Fax 855.740.2860
ttripodianos@wbgllp.com

As to the Surety:

Dino Colalillo
Lovett Silverman
888 Veterans Highway, Ste. 500
Hauppauge, NY 11788

With a copies to:

Paul T. DeVlieger, Esquire
DeVlieger Hilser P.C.
1518 Walnut Street, 16th Floor
Philadelphia, PA 19102

James M. Cashin
Cashin Spinelli & Ferretti, LLC
801 Motor Pkwy., Suite 103
Hauppauge, New York 11788

16. This Agreement is effective as of the date first written above.

17. This Agreement shall be binding upon the parties and their respective successors and assigns.  Any assignment by either party of its rights under this Agreement without the

written consent of the other party shall be void.

18. In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

19. It is understood and agreed by the Owner and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

_____, President
Ramapo Central School District

_____
Bryan Fortay, Esquire, VP Litigation
Star Insurance Company



**RAMAPO CENTRAL SCHOOL DISTRICT**
45 MOUNTAIN AVENUE
HILLBURN, NEW YORK 10931

Office of the Superintendent of Schools
Telephone: (845) 357-7783 Ext. 11229
Fax: (845) 357-5707
E-Mail: dadams@ramapocentral.org

January 30, 2014

**VIA CERTIFIED MAIL,**
<u>**RETURN RECEIPT REQUESTED**</u> #70111570000038117943
Star Insurance Company
465 North Cleveland Avenue
Westerville, OH 43082

**VIA CERTIFIED MAIL,**
<u>**RETURN RECEIPT REQUESTED**</u> #70111570000038117950
Olympic Coverage LLC
PO Box 5603
Astoria, NY 11105

**VIA FAX (718) 547-7210 & CERTIFIED MAIL**
<u>**RETURN RECEIPT REQUESTED**</u> #70111570000038117967
Mr. Tariq Mahmood, President/CEO
DM Restoration Inc.
3027 Wilson Ave.
Bronx, NY 10469

> Re:  Notice of Termination and Performance Bond Claim
> Performance Bond No. SSB0753651
> Principal: DM Restoration Inc.
> Owner: Ramapo CSD
> Project: Suffern Middle School/Suffern High School

Dear Sir/Madam:

The undersigned is the superintendent of the Ramapo Central School District (the "School District"). Reference is made to the above-reference Performance Bond No. SSB0753651, and the Agreement dated August 28, 2012 ("Construction Contract") between the School District and DM Restoration Inc. ("DM Restoration"). As you know, the above-mentioned Construction Contract relates to the project known as Suffern Middle School/Suffern High School (the "Project"),

By separate letter (attached) the project Architect, and Initial Decision Maker under the contract, Clark Patterson Lee has certified that sufficient cause exists to justify the termination of the contract between DM Restoration and the School District.  DM Restoration:

1. repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

2. fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors; and

**EXHIBIT**

tabbies®

**B**

3.  is otherwise is guilty of substantial breach of the Construction Contract.

For example, DM Restoration has:

1.  Failed to present a remediation plan for the repair of the metal roof it incorrectly installed. As a result of the defects in the roofing system there is continuous water infiltration and corresponding damages to other property as well as discoloration of brick;

2.  Failed to replace incorrect mortar color at Middle School storage building

3.  Failed to begin installation of store front at Middle School

4.  Failed to correct door fit problems at High School gym and storage addition

5.  Failed to complete door installation at High School courtyard addition despite repeated requests

6.  Failed to provide documentation of corrections to deficiencies as noted by Fairway Testing (i.e., improper installation of bracing at the Middle School storage building addition

7.  Failed to complete site work at both the Middle School and High School

8.  Failed to submit approximately 20 submittals many of which are months overdue

9.  Persistently failed to remove construction debris, conduct daily site cleanup and dumpsters which has been ongoing since day one

10. Failed to provide credit proposals for:
    a.  Substitution of hollow metal doors for FRP
    b.  Deletion trees at the Middle School
    c.  Smaller display cases due to incorrect wall openings
    d.  VCT v. carpeting at High School courtyard addition

11. Failed to complete installation of the curtain wall.

12. Upon information and belief, failed to cooperate with an investigation by the NYS Department of Labor which has already resulted in withholding of funds;

13. Failed to maintain the project schedule and has failed to provide a recovery schedule.

This letter shall serve as seven days' written Notice of Default and Termination of the above-referenced contract, pursuant to AIA General Conditions A201-2007 Article 14 and other relevant provisions of our contract.

In the event that it is determined that grounds for termination did not exist then this termination shall be deemed one for convenience.

Upon the expiration of the seven days the employment of DM Restoration shall be deemed terminated and the School District may, subject to any prior rights of the surety:

1.  Exclude DM Restoration from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

2.  Accept assignment of subcontracts pursuant to Section 5.4 of the A201; and

3.  Finish DM Restoration's Work by whatever reasonable method the School District may deem expedient.

In August, 2013, Star Insurance Company and Olympic Coverage LLC (the "Sureties") were notified by the School District that it was then considering declaring DM Restoration in default for many of the same reasons. Following the Sec 3.1 pre-default meeting pursuant to the Performance Bond and based upon the various promises from DM Restoration that the workforce would be increased, that the work would be scheduled and executed in a logical sequential manner, the Sureties' involvement and the engagement of a consultant, etc. the School District refrained from terminating DM Restoration at that time. It is the Architect's and the School

District's position that the situation has actually worsened as valuable time has passed (since August, 2013) and still there is no indication or confidence that the work will progress so that the school is not adversely impacted by uncompleted construction.

Accordingly, the School District calls upon the Sureties to make arrangements for the immediate completion of DM Restoration's work.

This and all prior correspondence is sent to you with full reservations of rights under the performance bond, etc. I look forward to hearing from you soon.

Very truly yours,

Dr. Douglas S. Adams, Superintendent

Kelly E. Seibert, Asst. Superintendent for Business

Enc.
cc:     James A. Keating, Esq.
        Bond Claims Counsel
        Radnor Financial Center
        150 North Radnor Chester Road
        Suite F-200
        Radnor, PA 19087

        Frank W. Brennan, Esq.
        Forchelli, Curto, Deegan,
        Schwartz, Mineo & Tarrana, LLP
        333 Earl Ovington Boulevard
        Suite 1010
        Uniondale, New York 11553

        Clark Patterson Lee (via email)



RAMAPO CENTRAL SCHOOL DISTRICT
45 MOUNTAIN AVENUE
HILLBURN, NEW YORK 10931

Office of the Assistant Superintendent for Business
Telephone: (845) 357-7713 Ext. 11341
Fax: (845) 357-3073
E-Mail: kcolbert@ramaporcentral.org

August 13, 2014

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED #70111570000038118155
Mr. Dino Colalillo
Lovett Silverman
888 Veterans Highway, Ste. 500
Hauppauge, NY 11788

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED #70111570000038118179
Mr. Paul T. DeVlieger, Esquire
DeVlieger Hilser P.C.
1518 Walnut Street, 16th Floor
Philadelphia, PA 19102

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED #70111570000038118162
Mr. James Cashin
Cashin Spinelli & Ferretti, LLC
801 Motor Parkway, Ste. 103
Hauppauge, NY 11788

> Re: Notice of Intent to Default
> Suffern High School & Middle Schools
> Additions and Alterations Project

Gentlemen:

As you know, as of July 1, 2014, Star Insurance Company (hereinafter "Surety") took over completion of the above referenced project from DM Restoration, Inc. ("DM"). This was only after, the owner, Ramapo Central School District ("RCSD") terminated DM on January 30, 2014 and made demand on the Surety, under the provisions and conditions of the Performance Bond Bonds (Bond No. SSB0753651), to take over and complete all required work that remains to be performed. Presumably, due to DM's performance problems the surety engaged Lovett Silverman and Cashin Spinelli & Ferretti, LLC ("the Consultants") to help advance the work prior to entering into the Takeover Agreement.



EXHIBIT

Unfortunately, since prior to DM's termination and continuing through today, the project continues to languish. For example, key aspects of the work like the curtain wall system have not been released for production. The curtain wall system is on the critical path. This basic failure is intolerable and will result in significant project delays.

In the past, RCSD attempted to accommodate minor changes in the schedule to keep the project moving in spite of DM's poor planning and woefully inadequate supervision. RCSD will no longer tolerate the random attack method of construction. Please recall that before RCSD and the Surety entered in the Takeover Agreement we had an extensive scope of work review meeting. At that meeting, RCSD's representatives made the Consultants fully aware of the tight time constraints and the need to put the buildings into use. RCSD hereby puts the surety and its surety on notice that it fully intends on assessing damages based on the original occupancy dates planned for each building. Since the Surety has failed to timely deliver each building on schedule, RCSD will also hold the Surety liable for all actual damages including, but not limited to the costs having making alternative classroom, etc. arrangements.

Under our Contract the Surety must absorb the costs of over-time and acceleration if necessary.

The project must get back on track and RCSD is looking to the Surety to complete the project on time and on budget. Any failure, refusal or delay in carrying-out the work will result in RCSD availing itself of all contractual remedies and assessing the appropriate costs against requisitions for payment as the work proceeds.

Thank you, in advance, for what I hope will be the Surety's renewed commitment to the project.

Very truly yours,

Kelly Seibert
Assistant Superintendent for Business

cc:     Clark Patterson Associates



**RAMAPO CENTRAL SCHOOL DISTRICT**
45 MOUNTAIN AVENUE
HILLBURN, NEW YORK 10931

Office of the Assistant Superintendent for Business
Telephone: (845) 357-7783 Ext. 11241
Fax: (845) 357-3073
E-Mail: kseibert@ramapocentral.org

October 10, 2013

**VIA EMAIL & CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED** (#70111570000038117738)
Star Insurance Company
465 North Cleveland Avenue
Westerville, OH 43082

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED** (#70111570000038117745)
Olympic Coverage LLC
PO Box 5603
Astoria, NY 11105

**VIA FAX (718) 547-7210 & CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED** (#70111570000038117752)
Mr. Tariq Mahmood, President/CEO
DM Restoration Inc.
3027 Wilson Ave.
Bronx, NY 10469

Re:   Demand for Immediate Surety Involvement due to Principal's Abandonment of Project
Performance Bond No. SSB0753651
Principal: DM Restoration Inc.
Owner: Ramapo CSD
Project: Suffern Middle School/Suffern High School

Dear Sir/Madam:

Reference is made to the above-referenced Performance Bond No. SSB0753651, the Agreement dated August 28, 2012 ("Construction Contract") between the Ramapo Central School District ("the School District") and DM Restoration Inc. ("DM Restoration"). As you know, the above-mentioned Construction Contract relates to the project known as Suffern Middle School/Suffern High School (the "Project").

On October 8, 2013 the School District was notified prior to the scheduled construction meeting by an associate at Clark Patterson Lee and again during the meeting that DM Restoration intends to abandon the Project. Mr. Tariq Mahmood, DM Restoration's President, advised the School District that due to an emergency crisis that occurred in Pakistan, DM Restoration would be unable to complete the Project and that he would be leaving the country on Thursday October 10, 2013. Mr. Mahmood stated that DM Restoration will not perform any further work to complete the Project. Mr. Mahmood's statement confirmed the conversation of the same substance between Clark Patterson Lee and Paul Ali [sic̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶]storation earlier that same day.

**EXHIBIT**

D

Pursuant to the Construction Contract between the School District and DM Restoration, the Project is to be completed by no later than November 29, 2013. DM Restoration has completed approximately 80% of the project. DM Restoration has been paid $875,416 to date for work performed. The remaining unexpended funds for the project are $414,870. On July 22, 2013 the School District received a withholding notice from the New York State Department of Labor (NYSDOL) requiring the District to withhold $100,000 from the completed work portion of DM Restoration's contract.

Furthermore, there are outstanding claims by DM Restoration's vendors that were to be paid by joint check. Your principal's departure from the country now makes that impossible. The School District believes that keeping these vendors engaged is vital to the successful and timely completion of the Project.

There are multiple remaining outstanding items that need to be addressed at the Suffern Middle School and Suffern High School, for which DM Restoration is contractually responsible. The following are the major outstanding items:

## Suffern Middle School

1. Completion of metal roofing and issuance of warranty.
2. Repair and/or replacement of metal roofing insulation.
3. Site work clean-up.
4. Inspection and issuance of rubber roof warranty.
5. Removal and replacement of two caps on the stone sign.

## Suffern High School

1. Replace or repair gymnasium doors.
2. Furnish and install courtyard window wall.
3. Furnish and install two thru the wall display cases.
4. Complete installation of ceiling grid and ceiling tile.
5. Install flooring.
6. Complete interior walls including sheetrock, insulation, etc.
7. Furnish and install interior doors, hardware, and door glass.
8. Provide three interior finished doors as specified.
9. Furnish and install two fire-rated windows.
10. Install spray-on fire retardant as specified.
11. Removal of remaining tools, equipment, materials, and fencing.

In addition to the items listed above, there are significant punch list items that cannot be completed until the above items are finished. Once the work left to be completed has been done, there no doubt will be additional punch list items to be completed.

DM Restoration's abandonment of the Project will undoubtedly delay the overall completion. In light of the above the School District demands the surety's immediate involvement to ensure that the remaining work is completed per the contractual language by no later than November 29, 2013. Please contact the undersigned as soon as possible to present the surety's plan to remedy DM Restoration's abandonment.

Very truly yours,

Kelly E. Seibert, Asst. Superintendent for Business

cc: Dr. Douglas S. Adams, Superintendent
    Stephen Fromson, Esq.
    Thomas Tripodianos, Esq.

# DVH
## DeVlieger Hilser P.C.
ATTORNEYS AT LAW

*Paul T. DeVlieger*⁺~

*\*Also Admitted in NJ*
*~Also Admitted in USDC PR*

August 22, 2014

*Direct Dial Ext. 111*
*email: pdevlieger@dvhlaw.com*

**Via Electronic Mail**
Thomas S. Tripodianos
Welby, Brady & Greenblatt, LLP
11 Martine Avenue, 15th Floor
White Plains, New York 10606

| | | |
|---|---|---|
| Re: | Principal: | DM Restoration, Inc. |
| | Project: | Ramapo Central School District – Suffern High School & Middle Schools |
| | Bond No.: | SSB0753651 |
| | Subject: | 101:1413/Star/Ramapo |

Dear Tommy:

I acknowledge receipt of your letter of August 19, 2014 enclosing an updated prioritization of remaining work and requesting dates that the surety is available to meet to discuss potential deductive change orders. While I truly appreciate you efforts in this regard, I am having trouble reconciling your letter with the letter of the August 13, 2014 issued by the Ramapo Central School District (the "District"). I have enclosed a copy of the District's letter for your reference.

As you are aware, the Takeover Agreement entered into by the District and Star Insurance Company (hereinafter "Star") provides as follows:

> Owner will pay the sum of $278,703.70, (the "Contract Balance") subject to the vacatur of the NYS Dept. of Labor withholding in the sum of $100,000, together with any additional amount of money added to Contract price following the date of this agreement on account of extra work and/or change orders as the work progresses at the times and under the procedures according to terms and conditions of the Contract, including retainage currently held or coming due in the future....

and

1518 Walnut Street, 16ᵗʰ Floor, Philadelphia, PA 19102 (215) 735-9181 Phone  (215) 735-9186 Fax
2 Executive Campus, Suite 402, 2370 Route 70 West, Cherry Hill, NJ 08002 (856) 661-1150 Phone (856) 661-1151 Fax
352 San Claudio Ave. 2ⁿᵈ Fl., Sagrado Corazon, San Juan, PR 00926 (787) 292-7564 Phone (787) 760-5718 Fax



# DVH
## DeVlieger Hilser P.C.
ATTORNEYS AT LAW

Surety shall perform with reasonable speed all of the remaining work required by the contractor's Contract...

*See* Takeover Agreement. Despite agreeing to pay the full contract balances over in exchange for Star performing the remaining work with "reasonable speed," the August 13, 2014 letter from the school district unequivocally states:

RCSD hereby puts the surety and its surety (sic) on notice that it fully intends on assessing damages based on the original occupancy dates planned for each building. Since the surety has failed to timely deliver each building on schedule, RCSD will also hold the Surety liable for all actual damages including, but not limited to the costs (sic) having making alternative classroom, etc. arrangements.

*See* Letter of August 13, 2014. As one court has recently explained, the general rule under New York law provides as follows:

Generally, an anticipatory breach occurs when a party to a contract declares his intention not to perform his future obligations. *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 682 N.Y.S.2d 664, 705 N.E.2d 656, 659 (1998); *De Lorenzo v. Bac Agency, Inc.*, 256 A.D.2d 906, 681 N.Y.S.2d 846, 848 (N.Y.App.Div.1998); JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 12–4, at 525 (3rd ed. 1987)("CALAMARI & PERILLO"); RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. b (1979). Under New York law, an anticipatory breach, like any other breach, gives the non-breaching party two mutually exclusive options. He may elect to treat the contract as terminated and exercise his remedies, or continue to treat the contract as valid. *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F.Supp.2d 383, 388 (S.D.N.Y.1999); *Strasbourger v. Leerburger*, 233 N.Y. 55, 134 N.E. 834, 835 (N.Y.1922); *Inter–Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D.2d 932, 686 N.Y.S.2d 911, 913 (N.Y.App.Div.), *leave to appeal denied*, 93 N.Y.2d 812, 695 N.Y.S.2d 540, 717 N.E.2d 699 (1999). If he elects to terminate the contract and sue for breach, he is excused from tendering his own performance; he need only show that was ready, willing and able to perform. *De Forest Radio Tel. & Tel. Co. v. Triangle Radio Supply Co.*, 243 N.Y. 283, 153 N.E. 75, 78, *rearg. denied*, 243 N.Y. 618, 154 N.E. 629 (1926); *see Strasbourger v. Leerburger*, 134 N.E. at 836.

*In re Randall's Island Family Golf Centers, Inc.*, 261 B.R. 96, 101, 37 Bankr.Ct.Dec. 204 (Bkrtcy.S.D.N.Y. 2001.). More specifically, the Appellate Division explained:

Anticipatory repudiation occurs when a party "attempt[s] to avoid its obligations by advancing an untenable interpretation of the contract, or ... communicate[s] its

1518 Walnut Street, 16th Floor, Philadelphia, PA 19102 (215) 735-9181 Phone (215) 735-9186 Fax
2 Executive Campus, Suite 402, 2370 Route 70 West, Cherry Hill, NJ 08002 (856) 661-1150 Phone (856) 661-1151 Fax
352 San Claudio Ave. 2nd Fl., Sagrado Corazon, San Juan, PR 00926 (787) 292-7564 Phone (787) 760-5718 Fax

dvhlaw.com suretycounsel.com

# DVH
## DeVlieger Hilser P.C.
### ATTORNEYS AT LAW

intent to perform only upon the satisfaction of extracontractual conditions" (*SPI Communications v. WTZA–TV Assoc. Ltd. Partnership,* 229 A.D.2d 644, 645, 644 N.Y.S.2d 788 [1996] [internal quotation marks omitted]; *see IBM Credit Fin. Corp. v. Mazda Motor Mfg. [USA] Corp.,* 92 N.Y.2d 989, 993, 684 N.Y.S.2d 162, 706 N.E.2d 1186 [1998]). Such conduct excuses the non-repudiating party from further performance and entitles it to claim damages for total breach (*See O'Connor v. Sleasman,* 14 A.D.3d 986, 987–988, 788 N.Y.S.2d 518 [2005]; *SPI Communications v. WTZA–TV Assoc. Ltd. Partnership,* 229 A.D.2d at 645, 644 N.Y.S.2d 788). Whether such a repudiation took place is "a factual determination [and] heavily dependent upon a determination of whether 'a breaching party's words or deeds are unequivocal' " (*O'Connor v. Sleasman,* 14 A.D.3d at 987–988, 788 N.Y.S.2d 518, quoting *Norcon Power Partners v. Niagara Mohawk Power Corp.,* 92 N.Y.2d 458, 463, 682 N.Y.S.2d 664, 705 N.E.2d 656 [1998] ).

*Fonda v. First Pioneer Farm Credit, ACA,* 86 A.D.3d 693, 694-95, 927 N.Y.S.2d 417 (N.Y.A.D. 3 Dept. 2011). The District's letter unequivocally disavows the District's obligations under the Takeover Agreement to pay the full contract balances to Star in exchange for Star performing the remaining work with "reasonable speed." In accordance with the above authorities, please accept this as the Star's election to treat the Takeover Agreement as terminated.

Nothing herein shall be deemed to be an estoppel, waiver or modification of any of Star's rights or defenses and Star hereby reserves all of its rights and defenses under any agreements, bonds or applicable law.

Thank you.

Very truly yours,

PAUL T. DEVLIEGER

PDV/cs

cc:     James Cashin (via electronic mail)

1518 Walnut Street, 16th Floor, Philadelphia, PA 19102  (215) 735-9181 Phone   (215) 735-9186 Fax
2 Executive Campus, Suite 402, 2370 Route 70 West, Cherry Hill, NJ 08002 (856) 661-1150 Phone (856) 661-1151 Fax
352 San Claudio Ave. 2nd Fl., Sagrado Corazon, San Juan, PR 00926 (787) 292-7564 Phone (787) 760-5718 Fax

dvhlaw.com   suretycounsel.com



# WELBY, BRADY & GREENBLATT, LLP
ATTORNEYS AT LAW

THOMAS S. TRIPODIANOS
TTRIPODIANOS@WBGLLP.COM
ADMITTED IN NY, CT, PA, MA

December 3, 2014



### VIA FIRST CLASS MAIL AND EMAIL

Paul T. DeVlieger, Esquire
DeVlieger Hilser P.C.
1518 Walnut Street, 16th Floor
Philadelphia, PA 19102

Re:     Sureties: Star Insurance Company & Olympic Coverage LLC
        Principal: DM Restoration Inc.
        School District: Ramapo Central School District
        Performance Bond No.: SSB0753651
        Project: Ramapo Central School District –
        Suffern High School & Middle Schools
        File # 00557.00007

Dear Paul:

In the months since your August 22, 2014 correspondence (copy enclosed) and the Ramapo Central School District's (the School District) rejection of your client's purported termination of the Takeover Agreement dated July 1, 2014 (copy enclosed) our clients have had multiple discussions concerning the fulfillment of the Sureties' obligations under the Performance Bond. The most recent November 19, 2014, proposal by the Sureties of single lump sum payment falls woefully short of that goal, and I have been instructed by my clients to reject same.

As you have repeatedly stated, the Sureties have through their consultant, Cashin, Spinelli, Feretti, LLC, (and before that Lovett Silverman) have been investigating the most efficient and expedient means of completing the Project. This investigation which has been going on since before July 2014, must have apprised the Sureties of not only of the extent of its principal's deficient performance, but also of the cost to complete to correct and complete its work. You have also been made aware that the School District has conducted similar investigation. It is my understanding that both our clients have come up with roughly similar estimated costs to complete the Project, yet the most recent proposal doesn't even approach those estimates.

11 Martine Avenue  , New York 10606
Phone: (914) 428-2               •  www.wbgllp.com

**EXHIBIT**
**F**



If the Sureties believe that the School District might be tempted to accept such a derisory offer, based upon the Sureties' position concerning the School District's supposed "anticipatory repudiation" of the Takeover Agreement, they are badly mistaken. Rather, it is suspected that the surety did not investigate the costs to complete the project in earnest until after entering into the Takeover Agreement. When it became clear that the costs to complete the project, the withholding of funds by the Department of Labor, and the various payment bond claims were approaching the penal sum of the Performance Bond, the Sureties elected to try to negotiate after the fact, in the hopes of making a smaller lump sum payment.

The School District has not repudiated the Takeover Agreement. Rather it is the Sureties that have breached the Takeover Agreement through their wrongful termination.

The Sureties are claiming that the School District's August 13, 2014 correspondence (enclosed) was a repudiation of the Takeover Agreement, as it threatened to hold the surety liable for damages based upon delayed performance. The School District's letter is clearly in accordance with the terms and provisions of the Takeover Agreement. The Takeover Agreement provides in relevant part (Emphasis added):

> 2.       ... The Owner will pay the Contract Balances to Surety or in accordance with Surety's written directions (1) in accordance with the terms of this Agreement; (2) **in accordance with the terms of the Contract as to time, amounts and methods of payments. Where there is a conflict in such terms, the Contract shall control** except, monies shall be paid to Surety or such other persons, firms or corporations as Surety may direct in writing at any time or times hereafter.

> 5.       ...Surety will be entitled to time extensions (a) **in accordance with the terms and conditions of the Contract allowing same** and (b) with respect to any latent defects as of the date of this Agreement adversely affecting the scheduled completion.

> 7.       Regardless of any claim or contentions which Contractor has made or may make against the Owner or which the Owner has made or may against the Contractor, the Owner will fully perform all of the obligations undertaken by it in the Contract and among other things, **will make payment to Surety of all amounts due or to become due in relation to the Contract as if Surety were the original "contractor" under the Contract.**



Paul T. DeVlieger, Esquire
DeVlieger Hilser P.C.
December 3, 2014
Page 3

Thus, any contention that the School District's August 13, 2014 letter was an "unequivocal repudiation" of the Takeover Agreement is not merely wrong but frivolous.

At no time has the School District indicated it will not make payment as promised, or otherwise act not in accordance with the Takeover Agreement. Indeed, the School District's correspondence reaffirms that it will pay the promised sums, for the timely completion of the Sureties' obligations, which is of paramount importance to the School Dstrict:

> The project must get back on track and RCSD is looking to the Surety to complete the project on time and on budget. Any failure, refusal or delay in carrying-out the work will result in RCSD availing itself of all contractual remedies and assessing the appropriate costs against requisitions for payment as the work proceeds.

> Thank you, in advance, for what I hope will be the Surety's renewed commitment to the project.

Thus, it is undisputedly the Sureties that have breached the Takeover Agreement, by failing to provide any schedule for completing the work, or even to request an extension of time, pursuant to paragraph 5 of the Takeover Agreement.

It can hardly be claimed that the Sureties are moving with reasonable dispatch, when it is now December 2014 and the project is in the same state of dormancy as when the principal was defaulted in January 2014, or when the Sureties signed the Takeover Agreement in July 2014.

The School District urges the Sureties to reconsider their proposal, in light of their default under the Takeover Agreement and the Performance Bond. If the Sureties continue to maintain this untenable position, or fail to commence and continue to complete the Project by presenting a completion schedule and identifying the contractor(s) that will perform the work by December 11, 2014, the School District will be constrained to exercise all available remedies all of which are expressly reserved.

Very truly yours,

Thomas S. Tripodianos

Enc.

Correspondence from DeVlieger Hilser P.C.dated August 22, 2014
Takeover Agreement dated July 1, 2014
Correspondence from School District dated August 13, 2014



Paul T. DeVlieger, Esquire
DeVlieger Hilser P.C.
December 3, 2014
Page 4

cc:    Kelly E. Seibert
        Assistant Superintendent for Business
        Ramapo Central School District
        45 Mountain Avenue
        Hillburn, New York 10931